# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JORGE GONZALEZ, on behalf of himself and all other persons similarly situated, known and unknown, | ) ) ) ) |
| Plaintiff, | ) Case No. 1:20-cv-04354 ) ) |
| v. | ) Judge Thomas M. Durkin ) ) Magistrate Judge Heather K. McShain |
| RICHELIEU FOODS, INC., | ) ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION AND MEMORANDUM OF LAW FOR
ATTORNEY FEES, LITIGATION COSTS,
SETTLEMENT ADMINISTRATION COSTS, AND SERVICE AWARD**

Douglas M. Werman
dwerman@flsalaw.com
Zachary C. Flowerree
zflowerree@flsalaw.com
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, Illinois 60602
Tel: (312) 419-1008
Fax: (312) 419-1025

*Attorneys for Plaintiff
and Settlement Class Members*

I.  **Introduction**

On July 20, 2021, this Court granted preliminary approval of the Parties' $876,750.00 non-reversionary class action Settlement under the Biometric Information Privacy Act ("BIPA").[1] With more than 30 days to go before the deadline, approximately 22 percent of Settlement Class Members already returned valid claim forms to request payment. To date, not a single Settlement Class Member has objected to the Settlement or requested exclusion from it. The substantial claims rate and lack of objections and exclusions underscore the strength of the Settlement. The excellent Settlement supports awarding Settlement Class Counsel one-third of the Gross Fund as attorney fees and litigation costs of $5,772.28. The Settlement also supports awarding the Settlement Administrator its costs of $14,278 and the Class Representative a Service Award of $7,500.

II. **Legal Background and Procedural History** (Ex. 1, Settlement Agreement, § I.)[2]

In 2008, Illinois enacted BIPA to regulate "the collection, use, safeguarding, handling, storage, retention, and destruction" of individuals' biometric data. 740 ILCS 14/5(g). The new legislation was necessary for several reasons. First, individuals cannot change their biologically unique identifiers, like fingerprints, and so they have no recourse when those identifiers are compromised. 740 ILCS 14/5(c). Second, an "overwhelming majority" of the public are concerned about use of biometric data tied to finances and other personal information. 740 ILCS 14/5(d). Third, the "full ramifications of biometric technology are not yet fully known." 740 ILCS 14/5(f). BIPA addresses these concerns, in part, by creating a privacy interest in a person's biometric data and giving individuals the right to control when a private entity collects that data. *Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶¶ 34-35 (Ill. 2019).

---

[1] Capitalized terms not defined here are defined in the Parties' Settlement Agreement, which is attached here as Exhibit 1.

[2] When feasible, citations are in the headings to avoid unnecessary multiplication of in-text citations.

Among other things, BIPA prohibits a private entity from collecting a person's biometric data unless the entity first informs the person, in writing: (1) that it is collecting biometric data; (2) the purpose of the collection; and (3) how long the private entity will keep the person's biometric data. 740 ILCS 14/15(b). The private entity must also obtain the individual's "written release" authorizing collection of the biometric data. *Id.* BIPA further regulates a private entity's possession, storage, and disclosure of biometric data. 741 ILCS 14/15(a), (c), (d), and (e). Private entities face liquidated or actual damages, whichever are higher, for negligent and reckless/intentional violations of the law. 740 ILCS 14/20.

This lawsuit alleges that Defendant collected biometric data from direct employees and temporary staffing agency workers through a fingerprint scan timekeeping system without informing them in writing that it was doing so, without identifying the purpose of the collection, without identifying how long it would retain their data, and without obtaining their informed written consent. 740 ILCS 14/15(b). The lawsuit further alleges that Defendant stored biometric data from direct employees and temporary staffing agency workers without establishing and following a biometric data retention and destruction policy, which requires a private entity like Defendant to destroy biometric data once the purpose for collection is complete. 740 ILCS 14/15(a). Finally, the lawsuit alleges that Defendant disclosed biometric data to its timekeeping vendor without consent. 740 ILCS 14/15(d). After initial written discovery, the Parties reached a Settlement through a mediation with retired Judge Stuart Palmer.

**III. Settlement Class Counsel Negotiated a Highly Favorable Settlement Structure, Robust Notice Program, and Effective Claims Process** (Ex. 2, Flowerree Decl. ¶¶ 12-14)

Settlement Class Counsel negotiated a claims structure that equally distributes the full amount of the Net Fund to Settlement Class Participants without any money reverting back to the Defendant. If the Court approves all elements of this Settlement and there is a 30 percent claims

rate, the net payments will be over $2,400 to each Settlement Class Participant. If there is a 35 percent claims rate, the net payments will be over $2,000 to each Settlement Class Participant.

The structure that Settlement Class Counsel negotiated here is superior to alternatives approved in other BIPA class action settlements. For example, some settlement structures arbitrarily cap the amount that claimants can receive, regardless of the number of claims submitted. *See, e.g., Zhirovetskiy v. Zayo Group, LLC*, 17-CH-9323 (Cir. Ct. Cook Cnty.) (capping claimants' maximum recovery in BIPA settlement at $400); *Rafidia v. KeyMe, Inc.*, 18-CH-11240 (Cir. Ct. Cook Cnty.) (capping claimants' recovery in BIPA settlement at $515). Other settlement structures only require a defendant to pay for claims submitted and allow a defendant to retain unclaimed funds. *See, e.g., Marshall v. Life Time Fitness, Inc.*, 17-CH-14262 (Cir. Ct. Cook Cnty.) (limiting the defendant's funding obligations toward the settlement class to payment of "Approved Claims"). By contrast, this Settlement requires Defendant to fund the full $876,750 Gross Fund – without any conditional funding or potential reversion for uncashed checks – and then requires the full Net Fund to be distributed to claimants. Simply put, Settlement Class Counsel negotiated the most favorable claims structure possible for Settlement Class Members.[3]

And Settlement Class Counsel paired this favorable claims structure with a robust notice program and claim filing process to maximize the number of Settlement Class Members who

---

[3] A claims process is appropriate in this Settlement because there is no contact information for 139 Settlement Class Members, Ex. 3, Declaration of Due Diligence, ¶ 7, and so direct distribution of payments to all Settlement Class Members is not feasible. The Settlement Class Members without contact information are individuals who worked for Defendant through third-party temporary staffing agencies. Settlement Class Counsel obtained names of these workers from Defendant and then served subpoenas on the staffing agencies. One agency was no longer operating and corporate entity under which it operated was revoked. Although Settlement Class Counsel still attempted to serve a subpoena on that agency, it was unsuccessful and so no contact information was obtainable. While the remaining four agencies provided subpoena responses, they were still unable to provide contact information for each Settlement Class Member identified. Thus, absent a claims process, a significant portion of the Net Fund would not be distributed to anyone. In this situation, Settlement Class Counsel believe a claims process is a reasonably equitable mechanism because it allows for distribution of the entire Net Fund, rather than just a portion of it.

submit claims. Many BIPA class settlements provide notice to class members by direct mail, only. By contrast, here Settlement Class Counsel negotiated three forms of notice: direct mail (when possible), email (when possible), and text message (when possible). And the email and text message notices include one reminder for Settlement Class Members who have not yet returned claims within 30 days of the deadline. Settlement Class Counsel likewise negotiated multiple avenues for Settlement Class Members to return claim forms: via a pre-paid mailing envelope or electronically through the case website. The interim results confirm the effectiveness of the notice program and claim process: approximately 22 percent of Settlement Class Members have returned valid claim forms as of November 3rd. Ex. 3, Declaration of Due Diligence, ¶ 13. Already, this far exceeds the median claims rate of 9 percent in a recent study of class action settlements. *See* Federal Trade Commission, Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns, p. 11 (Sept. 2019), available here. Likewise, the claims rate here already far exceeds the approximately 12.5 percent claims rate in a recent BIPA settlement against a payroll vendor, ADP, and even matches the "impressive" claims rate of approximately 22 percent in the recent Facebook BIPA settlement. Ex. 2, Flowerree Decl. ¶ 14.

**IV.    Class Counsel are Entitled to Payment of Their Reasonable Attorney Fees**

    **A.    The Court Should Award Attorney Fees as a Percentage of the Fund**

The Court should award attorney fees as a percentage of the settlement fund made available to the class members. When counsel's efforts result in the creation of a common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544, 548 (7th Cir. 2003). This is "based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691-92 (7th Cir. 2007) (quoting *Skelton v. G.M. Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)).

Although there are two ways to compensate attorneys – the lodestar method and the percentage of the fund method, *see Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565-66 (7th Cir. 1994) – the favored approach in the Seventh Circuit is to use the percentage of the fund method in common fund cases like this one. "Our court of appeals favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*." *In re FedEx Ground Package System, Inc. Employment Practices Litig.,* 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017) (citing *In re Synthoid Mktg. Litig.,* 325 F.3d 974, 979-80 (7th Cir. 2003)).

There are two primary reasons why the percentage of the fund method is superior to the lodestar method. First, the percentage of the fund method promotes early resolution and removes the incentive for plaintiffs' lawyers to engage in wasteful churning of the file to increase their billable hours. *See In re Synthroid Mktg. Litig.*, 264 F.3d 712, 789-90 (7th Cir. 2001). Where attorney fees are limited to a percentage of the total, "courts can expect attorneys to make cost-efficient decisions about whether certain expenses are worth the win." *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998). Second, the percentage method preserves judicial resources because it saves the Court from the cumbersome task of reviewing complicated and lengthy billing documents. *Florin*, 34 F.3d at 566. Courts in this district routinely apply the percentage method to common fund settlements and have noted the advantages of this approach. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1040 (N.D. Ill. 2011) (using percentage method because it did "not need to resort to a lodestar calculation, which would be costly to conduct, to reinforce the same conclusion"); *Gaskill*, 942 F. Supp. at 386 (describing advantages of percentage method, including judicial efficiency and an "efficient check on the attorney's judgment" in economic decision-making).

**B.     Analysis of the Market for Legal Services Supports the Fee Request**

In deciding the fee award in common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton,* 504 F.3d at 692-94 (quoting *In re Synthroid Mktg. Litig.,* 264 F.3d at 718)). The Seventh Circuit has held that "[a]lthough it is impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. Aon Corp.,* 415 F.3d 597, 599 (7th Cir. 2005).

The percentage method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986) ("[w]hen the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original). In the marketplace, the "contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Id.* at 325.

It is for these reasons that the percentage-of-the-recovery approach makes the most sense for this case and has been used in most BIPA class action settlements. *See* BIPA Settlement Chart, *infra* at 9-10.[4] As such, this Court should apply the percentage-of-the-recovery method.

Here, before filing the Complaint, Settlement Class Counsel executed a fee agreement with the Settlement Class Representative that entitled Settlement Class Counsel to attorney fees

---

[4]     Indeed, Settlement Class Counsel are unaware of any recent BIPA class action settlement where a court awarded fees based on the lodestar method instead of the percentage method. Ex. 2, Flowerree Decl. ¶ 15.

equal to at least one third of any recovery. Ex. 2, Flowerree Decl., ¶ 16. So, the Court knows the amount the Settlement Class Representative and Settlement Class Counsel negotiated for in the marketplace. Because of the negotiated attorney fee arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs v. PNC Fin. Svcs. Group, Inc.*, No. 2016 WL 7018566, at *4 (N.D. Ill. Nov. 29, 2016). Consistent with the fee agreement and the Settlement Agreement, Settlement Class Counsel are seeking one-third of the common fund, minus settlement administration costs of $14,278 and the Settlement Class Representative's requested Service Award of $7,500. *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) (settlement administration costs generally should not be included when calculating class counsel's fee). This percentage is consistent with the low end of standard contingent fee awards in the Northern District of Illinois. *See, e.g., Dobbs v. DePuy Orthopaedics, Inc.,* 885 F.3d 455, 459 (7th Cir. 2018) ("The typical contingent fee is between 33 and 40 percent").[5]

### C. The Risk of Non-Payment Supports the Requested Fees

Settlement Class Counsel's decision to seek the market rate is also reasonable in light of the significant risks of nonpayment that Settlement Class Counsel faced. At the outset of the litigation, Settlement Class Counsel took "on a significant degree of risk of nonpayment" in agreeing to represent Settlement Class Representative. *Taubenfeld,* 415 F.3d at 600 (approving of district court's reliance on this factor in evaluating attorneys' fees).

Settlement Class Counsel took this case on a contingent fee basis and assumed the risk that they would receive *no* fee for their services. Ex. 2, Flowerree Decl., ¶ 17; *see Sutton*, 504 F.3d at

---

[5] *See also Retsky Family Ltd. P'ship v. Price Waterhouse LLP,* No. 97 C 7694, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (customary contingency fee ranges from 33 1/3% to 40% of the amount recovered)*; In re Diary Famers of Am., Inc.,* 80 F. Supp. 3d 838, 845 (N.D. Ill. 2015) (the usual range of contingent fees is between 33 and 50 percent); *McDaniel,* 2011 WL 13257336, at *4 ("[T]he real-word market range for contingent fee cases is 33% to 40%.") (Pallmeyer, J.).

693-94 (7th Cir. 2007) ("We recognized [in an earlier case] that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."). Here, Settlement Class Counsel faced risk of no recovery. In particular, Defendant could have defeated liability based on several current and future defenses in the lawsuit, including: (1) that Plaintiff's damages claims are barred by the exclusivity provisions of the Workers' Compensation Act, an issue which is currently on appeal before the Illinois Supreme Court;[6] (2) that Defendant's biometric timekeeping system does not collect biometric identifiers or biometric information as defined by BIPA; (3) that any biometric data collected from Defendant's timekeeping system was in the sole possession of Defendant's timekeeping vendor and so Defendant could never have collected, possessed, or disclosed the data; (4) that the statute of limitations under BIPA is one year instead of five years;[7] and (5) that any liquidated damages imposed would be excessive in light of the alleged harm and so would violate Defendant's due process rights. Ex. 2, Flowerree Decl., ¶ 17.

There is limited authority on any of these issues and so the litigation would have been protracted and expensive. *Id.* With these risks, Settlement Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.).

### D. The Benefits Conferred Upon Class Members Justify the Requested Fees

The benefit the Settlement provides Settlement Class Members is excellent: $1,128 gross for the 777 Settlement Class Members and likely thousands of dollars net per Settlement Class

---

[6] *McDonald v. Symphony Bronzeville Park, LLC*, Case No. 126511 (Ill.) (petition for leave to appeal accepted on January 26, 2021).

[7] After the Parties reached their settlement, the First District Appellate Court held that the five-year limitations period applies to BIPA claims under Sections 15(a), (b), and (e) and the one-year limitations period applies to claims under Section 15(c) and (d). *Tims v. Black Horse Carriers, Inc.*, Case No. 1-20-0563 (1st Dist) (Sept. 17, 2021). But given another ongoing appeal over the same issue, the Illinois Supreme Court is likely to be the ultimate decision-maker on this issue.

Participant (over $2,400 with a 30 percent claims rate; over $2,000 with a 35 percent claims rate). Ex. 2, Flowerree Decl., ¶ 12. The likely range of net per Settlement Class Participant payments are a minimal discount on the per person recovery Plaintiff could have obtained if he proved and was permitted separately to recover for three class-wide negligent violations of BIPA at trial, after years of additional litigation. 740 ILCS 14/20(1). The per-Settlement Class Member amount here compares favorably to other BIPA settlements where federal courts have granted final approval and awarded comparable attorney fees:

**BIPA SETTLEMENT CHART**
(Ex. 2, Flowerree Decl. ¶ 18)

| Case | Judge | Class Size | Per Class Member | Attorney Fees | Service Award |
|---|---|---|---|---|---|
| *Jones v. CBC Rest. Corp.*, 1:19-cv-06736 (N.D. Ill. Oct. 22, 2020) | Alonso | 4,053 | $800 gross; no claims process | $1,054,966 (32.5% fund) | $7,500 |
| *Dixon v. The Wash. & Jane Smith Home*, 1:17-cv-8033 (N.D. Ill. Aug. 20, 2019) | Kennelly | 1,378 | $1,085 or $768 gross; no claims process[8] | $451,548 (1/3rd of fund) | $10,000 |
| *Martinez v. Nando's Rest. Grp., Inc.*, 1:19-cv-07012 (Oct. 27, 2020 N.D. Ill.) | Ellis | 1,787 | $1,000 gross; no claims process | $595,666.67 (1/3rd of fund) | $7,500 |
| *Lane v. Schenker, Inc.*, 3:19-cv-00507-NJR (Nov. 17, 2020 S.D. Ill.) | Rosenstengel | 316 | $1,000 gross; no claims process | $105,333.33 (1/3rd of fund) | $7,500 |

---

[8] A total of 837 class members in the potential two-year potential limitations period received the larger number ($1,085.00 gross) and a total of 541 class members outside of the potential two-year but inside the potential five-year limitations period received the smaller award ($768.12 gross).

9

| Case | Judge | Class Size | Per Class Member | Attorney Fees | Service Award |
|---|---|---|---|---|---|
| *Thome v. NovaTime Tech., Inc.*, 1:19-cv-06256 (March 8, 2021 N.D. Ill.) | Kennelly | 68,213 | $365 net per claimant[9] | $1,365,300 (1/3rd of fund) | $7,500 |
| *Lopez-McNear v. Superior Health Linens, LLC*, 19-cv-2390 (Apr. 27, 2021 N.D. Ill.) | Pallmeyer | 790 | 1,000 gross; no claims process | $265,717.22 (35% of fund after admin. deduction) | $5,000 |
| *Bedford v. Lifespace Communities, Inc.*, 1:20-cv-04574 (May 12, 2021 N.D. Ill.) | Shah | 851 | $1,150 gross; no claims process | $328,954.05 (33.3% of fund) | $10,000 |
| *Burlinski v. Top Golf USA Inc.*, 1:19-cv-06700 (Oct. 13, 2021 N.D. Ill.) | Chang | 2,602 | $1,012 gross; no claims process | $865,345 (1/3rd of fund after *Redman* deductions) | $7,500 each |
| *Davis v. Heartland Employment Services, LLC*, 19-cv-00680 (Oct. 25, 2021 N.D. Ill.) | Valderrama | 11,048 | At least $689 per claimant | $1,777,110 (1/3rd of fund after *Redman* deductions) | $10,000 each |

**E.      The Attorney Fee Request Satisfies the *Redman* Ratio Test**

In 2014, the Seventh Circuit considered class action settlements with very low class member participation that were negotiated under questionable circumstances, and where only the parties and lawyers (not class members) were to benefit from the proposed settlements ("the Consumer Cases"). *Pearson v. NBTY, Inc.*, 772 F.3d 778 (7th Cir. 2014), 781-82; *Redman,* 768 F.3d at 630; *Eubank v. Pella Corp.*, 753 F.3d 718, 726 (7th Cir. 2014). In each of the Consumer

---

[9]     In the final approval motion, Plaintiff reported the claims rate was 10 percent. The settlement also allows Plaintiff to seek additional settlement funds based on an insurance policy assignment that the Defendant provided Plaintiff.

10

Cases, the class recovery was miniscule, the claims process was designed to discourage class participation, the claims rate was exceedingly low, and there were other indicia that class counsel had sold out the class in furtherance of class counsel's pecuniary interests. This Settlement stands in stark contrast to the Consumer Cases. It provides an outstanding result to Settlement Class Members, as described above in Sections III. and IV.D.

Based on the facts of the Consumer Cases, the Seventh Circuit instructed the district courts when approving settlements to examine the ratio of the fee requested to the fee plus what class members received (the "*Redman* Ratio test"). *See Redman*, 768 F.3d at 630; *accord Pearson,* 772 F.3d at 781-82. Under the *Redman* Ratio test, the "ratio that is relevant" in determining reasonable attorney's fees "... is the ratio of (1) the fee to (2) the fee plus what the class members received" and the "attorney's fees awarded to class counsel should not exceed *a third or at most a half of the total amount of money going to class members*." *Redman,* 768 F.3d at 630 (emphasis added); *Pearson,* 772 F.3d at 781-82. Settlement Class Counsel is seeking $284,991 in attorney fees. The ratio here is 33.33% ($284,991 fee / $854,972[10] fee plus amount payable to class), which falls well within the permissible *Redman* Ratio.

### F. Class Counsel's Fee Request Is Reasonable and Should Be Approved Without a Cross-Check, Although a Cross-Check Confirms Reasonableness

Settlement Class Counsel's fee request should be approved because it is reasonable based on the market rate. No further showing or analysis is needed. *In re FedEx Ground*, 251 F. Supp. 3d at 1243 ("A lodestar cross-check … isn't encouraged in this circuit."); *Wright v. Nationstar Mortgage LLC,* 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016) (courts can skip a lodestar

---

[10] The denominator here excludes settlement administration costs and the Service Award, but not litigation costs. *See Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 200 and n. 5-6 (N.D. Ill. 2018) (Chang, J.) (similar calculation excluded $298,321 in settlement administration costs and a $10,000 incentive award in the denominator, but not $52,458.90 litigation costs).

11

check). This is because the recovery for Settlement Class Members is substantial, the entire Net Fund will be distributed to Settlement Class Members who submit valid claims, and the settlement does not present indicia that it was the product of collusion between the Parties at the expense of Settlement Class Members. *See Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("consideration of a lodestar check is not an issue of required methodology"); *In re Dairy Farmers of Am.*, 80 F. Supp. 3d 838, 850 (N.D. Ill. 2015) ("For attorneys who are arguing for a percentage-of-the-fund fee award, any delineation of hours is seemingly unnecessary . . . ."). Although courts occasionally review counsel's lodestar as "a cross-check to assist in determining the reasonableness of the fee award," *Heekin v. Anthem, Inc.*, No. 05 Civ. 1908, 2012 WL 5878032, at *2 (S.D. Ind. Nov. 20, 2012), the lodestar cross-check is of limited utility because "[u]ltimately . . . the market controls," *In re Trans Union Corp. Privacy Litig.*, 2009 WL 4799954, at *9 (N.D. Ill. Dec. 9, 2009); *Wright,* 2016 WL 4505169, at *17 ("Nor the is the lodestar an accurate representation of the hypothetical market agreement between the plaintiffs and their attorneys"). As explained above, because Settlement Class Counsel's substantial work has "bought" a significant recovery for Settlement Class Members, the Court need not analyze the lodestar.

At the preliminary approval hearing, the Court directed Settlement Class Counsel to provide their lodestar in this fee motion. Not counting work on this fee briefing, Settlement Class Counsel's combined lodestar is $89,415.00 based on 191 hours of work at the reasonable hourly rates of Settlement Class Counsel's attorneys and paralegals. Ex. 2, Flowerree Decl. ¶ 20. The requested fee represents a 3.2 multiplier against this lodestar. Settlement Class Counsel expect to incur an additional $10,000 in lodestar subsequently, including communicating with the Settlement Administrator and defense counsel about the claims process and eventual settlement payment process, preparing the final approval motion, attending the final approval hearing, and answering

Settlement Class Member questions. *Id.* at ¶ 22. The requested fee represents a 2.9 multiplier when accounting for current and anticipated future lodestar. *Id.*

Likely because the Seventh Circuit has not required or even encouraged a lodestar cross-check in a common fund settlement like this one, there is minimal caselaw from district courts within the Seventh Circuit on an acceptable positive multiplier when awarding fees as a percentage of a class settlement fund. Over class member objections, Judge Dow awarded attorney fees of one-third of a $9.5 million overdraft fee class action settlement and noted that "[t]he requested award here would represent a multiplier of less than 2.5, which is not an unreasonable risk multiplier." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011). Judge Shah recently awarded $328,954.05 in attorney fees (33.3% of the fund) in a BIPA settlement where class counsel disclosed that it sought a fee of 5.3 times their $62,000 lodestar. *Bedford v. Lifespace Communities, Inc.*, 1:20-cv-04574, ECF No. 27 and 32 (N.D. Ill.). In reviewing a lodestar fee award from a class action settlement, the Seventh Circuit remarked that risk multipliers between one and four have been approved. *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) (remanding for consideration of a risk multiplier in light of the "probability of success in this type of litigation at the outset of the case"). Outside of the Seventh Circuit, courts regularly approve attorney fee awards in class settlements with mid-single digit lodestar multipliers.[11]

---

[11] *Frederick v. Range Resources—Appalachia, LLC*, 2011 WL 1045665, at *13 (W.D. Penn. Mar. 17, 2011) (approving cross-check multiple of **5.95** of the lodestar); *Steiner v. Am. Broadcasting Co., Inc.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving cross-check multiple of **6.85** of the lodestar); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (approving cross-check multiple of **8.3** of the lodestar); *In re Charter Commc'ns*, 2005 WL 4045741, at *18 (E.D. Mo. June 30, 2005) (approving cross-check multiple of **5.61** of the lodestar); *DiGiacomo v. Plains All Am. Pipeline*, 2001 WL 34633373, at *10 (S.D. Tex. Dec. 19, 2001) (approving cross-check multiple of **5.3** of the lodestar); *In re: Rite Aid Corp. Sec. Litig.*, 362 F. Supp. 2d 587, 589 (E.D. Penn. 2005) (approving cross-check multiple of **6.96** of the lodestar); *In re Enron Corp. Sec. Litig.*, 586 F. Supp. 2d 732, 779 (S.D. Tex. 2008) (approving cross-check of **5.2**); *In re: UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009) (approving cross-check of **6.5**); *Conley v. Sears, Roebuck & Co.*, 222 B.R. 181, 182 (D. Mass. 1998); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (approving cross-check of **5.5** or **5.8** with additional payments); *In re RJR Nabisco, Inc. Sec. Litig.*, 1992 WL 210138,

Here, the modest multiplier is reasonable because of the excellent result obtained, the risk of loss, and fee awards in similar BIPA cases. All of these factors are analyzed above.

## V. The Payment of Class Counsel's Litigation Expenses are Appropriate

The Settlement provides that Settlement Class Counsel may apply to the Court for payment of litigation costs. Settlement Class Counsel seek reimbursement of actual costs in the amount of $5,772.28, which includes filing fees, the service of process fee, mediation fees, electronic research fees, postage costs, DocuSign costs for electronic signatures, and an administrative fee to a subpoena recipient. Ex. 2, Flowerree Decl. ¶ 23. Settlement Class Counsel's request for these costs from the Gross Fund is appropriate, as these costs were necessarily incurred in order to litigate and settle this case. *Id.*

## VI. Payment of the Settlement Administrator's Costs Are Appropriate

Analytics Consulting, LLC ("Settlement Administrator") has administered the Class Notice process and will administer the remainder of the Settlement. Plaintiff requests that the Court award the Settlement Administrator its estimated expenses of $14,278. Ex. 2, Declaration of Due Diligence, ¶ 18.

## VII. Payment of a Service Award Is Appropriate

Consistent with the Settlement Agreement and Class Notice, the Settlement Class Representative Jorge Gonzalez requests a Service Award of $7,500. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 incentive award). "In deciding whether such an award is warranted,

---

at *5 (S.D.N.Y. Aug. 24, 1992) (approving cross-check of **6**); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n.1 (S.D.N.Y. 1991) (approving cross-check of **8.74**); *In re Cardinal Health, Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 767 (S.D. Ohio 2007) (approving cross-check of **5.9**).

relevant factors include [1] the actions the plaintiff has taken to protect the interests of the class, [2] the degree to which the class has benefitted from those actions, and [3] the amount of time and effort the plaintiff expended in pursuing the litigation." *Id.*

The Settlement Class Representative pursued this case in his own name and on behalf of the proposed class. In doing so, the Settlement Class Representative accepted a risk of retaliation from future potential employers who can easily identify him through a Google search as the lead plaintiff in this lawsuit against a previous employer. In addition, the Settlement Class Representative answered written discovery and communicated with Settlement Class Counsel through the case. Finally, the Settlement Class Representative's involvement in the case helped generate a significant recovery for Settlement Class Members. Ex. 2, Flowerree Decl. ¶ 24.

Service awards of $7,500 or more are regularly approved by federal courts in BIPA cases. *See* BIPA Settlement Chart, *supra* at 9-10. So too here the Court should award the Class Representative a $7,500 Service Award.

## VI. Conclusion

Settlement Class Counsel's fee request is reasonable based upon the fee agreement in this case, fee awards in similar cases, the risk of non-payment, and the result achieved. The Court should award Settlement Class Counsel attorney fees of $284,991, litigation costs of $5,772.28, the Settlement Administrator's costs of $14,278, and Plaintiff's Service Award of $7,500.

Respectfully submitted,

Dated: November 5, 2021

/s/Zachary C. Flowerree
*One of the Attorneys for Plaintiff and Settlement Class Members*

Douglas M. Werman
dwerman@flsalaw.com

Zachary C. Flowerree
zflowerree@flsalaw.com
**WERMAN SALAS P.C.**
77 W. Washington St., Suite 1402
Chicago, IL 60602
Tel: (312) 419-1008
Fax: (312) 419-1025

*Attorneys for Plaintiff
and Settlement Class Members*